UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) Case No. |
| Plaintiff, | ) |
| v. | ) |
| ADVANCED DENTAL CARE, P.A. and LESLEY C. KNOX, | ) |
| Defendants. | ) |
| | ) JURY TRIAL IS DEMANDED |

## COMPLAINT

Plaintiff Wells Fargo Bank, N.A. ("WFB"), by its counsel, as and for its Complaint against defendants Advanced Dental Care, P.A. ("ADC") and Lesley C. Knox ("Knox" and together with ADC, collectively, the "Defendants"), respectfully alleges as follows:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity of citizenship between the parties.

2.   Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2).

### THE PARTIES

3.   WFB is a national banking association chartered under the laws of the United States of America with its main office and principal place of business in Sioux Falls, South Dakota, and is therefore deemed to be a citizen of the State of South Dakota for diversity jurisdiction purposes.

1120768

4. Upon information and belief, at all relevant times, ADC was a Minnesota business corporation with its main office and principal place of business located at 825 S. 8th Street, SL-02, Minneapolis, Minnesota (the "Prior Office Location") and/or 2232 Hennepin Avenue South, Minneapolis, Minnesota (the "Current Office"), which premises are located within the District of Minnesota. Upon information and belief, at all relevant times, Knox was the sole owner of ADC and a citizen of the State of Minnesota. As such, ADC is therefore deemed to be a citizen of the State of Minnesota for diversity jurisdiction purposes. Upon information and belief, Knox is not a citizen of South Dakota.

5. Knox is an individual who is a citizen of the State of Minnesota and whose principal residence is 4627 West 149th Street, Savage, Minnesota, which premises is located in the District of Minnesota, and is therefore deemed to be a citizen of the State of Minnesota for diversity jurisdiction purposes.

## FACTS

6. On or about December 22, 2003, WFB's predecessor-in-interest, Cupertino National Bank ("CNB"), for good and valuable consideration, agreed to lend certain funds to ADC for use in connection with the operation of a dental practice (the "Practice") which was at that time located at 20546 Jupiter Avenue, Lakeville, Minnesota, and CNB and ADC entered into that certain Master Equipment Financing Agreement, described as Master Agreement No. 3000177 (and as any time amended, the "Master Agreement"). (A true and correct copy of the Master Agreement is annexed hereto as **Exhibit "1"** and the terms and conditions thereof are incorporated herein by reference.)

7. Subsequently, Greater Bay Bank, N.A. ("GBB") acquired CNB by merger and became the successor-in-interest to CNB with respect to the Master Agreement.

8. On or about April 21, 2004, for good and valuable consideration, and in accordance with the terms of the Master Agreement, GBB and ADC entered into that certain Schedule To Master Equipment Financing Agreement, described as Schedule No. 3000177-001 (and as any time amended, "Schedule No. 1"), whereby GBB lent certain amounts to ADC in accordance with the terms of the Master Agreement and ADC agreed to repay those amounts by making certain monthly payments to GBB (and its successors) on the terms and in the amounts set forth therein.

9. On or about April 21, 2004, for good and valuable consideration, and in accordance with the terms of the Master Agreement, GBB and ADC entered into that certain Schedule To Master Equipment Financing Agreement, described as Schedule No. 3000177-002 (and as any time amended, "Schedule No. 2" and together with Schedule No. 1, collectively, the "Original Schedules"), whereby GBB lent certain additional amounts to ADC in accordance with the terms of the Master Agreement and ADC agreed to repay those amounts by making certain monthly payments to GBB (and its successors) on the terms and in the amounts set forth therein.

10. On or about April 21, 2004, and in order to induce GBB to execute the Original Schedules, and for other good and valuable consideration, Knox executed that certain Secured Guaranty dated April 21, 2004 ("Guaranty No. 1"), pursuant to which she unconditionally guaranteed to GBB (and its successors), the prompt payment, observance, and performance of the Obligations (as that term is hereinafter defined). (A true and correct copy of Guaranty No. 1 is attached hereto as **Exhibit "2"** and the terms and conditions thereof are incorporated herein by reference.)

11. On or about September 15, 2006, ADC, for the purpose of evidencing indebtedness to GBB (and its successors), in the principal sum of $40,000.00, with interest

thereon, made, executed and delivered to GBB that certain Secured Open-End Promissory Note (as at any time amended and/or modified, the "Note"), whereby ADC was bound and promised to pay to GBB (and its successors) said sum, with interest thereon, all in accordance with the terms of the Note. (A true and correct copy of the Note is annexed hereto as **Exhibit "3"** and its terms and conditions are incorporated herein by reference.)

12.   On or about September 15, 2006, and in order to induce GBB to execute the Note, and for other good and valuable consideration, Knox once again agreed to unconditionally guaranty to GBB (and its successors) the prompt payment and performance of the Obligations ("Guaranty No. 2") (A true and correct copy of Guaranty No. 2 is located on page 2 of the Note and the terms and conditions thereof are incorporated herein by reference.)

13.   Subsequently, WFB acquired GBB by merger and became the successor-in-interest to GBB with respect to the Master Agreement, the Original Schedules, Guaranty No. 1, the Note and Guaranty No. 2.

14.   On or about May 29, 2008, for good and valuable consideration, and in accordance with the terms of the Master Agreement, WFB and ADC entered into that certain Schedule To Master Equipment Financing Agreement, described as Schedule No. 3000177-901 (and as any time amended, "Schedule No. 3"), whereby WFB lent certain additional amounts to ADC in accordance with the terms of the Master Agreement and ADC agreed to repay those amounts by making certain monthly payments to WFB on the terms and in the amounts set forth therein. (A true and correct copy of Schedule No. 3 is attached hereto as **Exhibit "4"** and the terms and conditions thereof are incorporated herein by reference.)

15.   On or about May 29, 2008, for good and valuable consideration, and in accordance with the terms of the Master Agreement, WFB and ADC entered into that certain

Schedule To Master Equipment Financing Agreement, described as Schedule No. 3000177-902 (and as any time amended, "Schedule No. 4" and together with the Master Agreement, the Original Schedules and Schedule No. 3, collectively, the "Financing Agreement"), whereby WFB lent certain additional amounts to ADC in accordance with the terms of the Master Agreement and ADC agreed to repay those amounts by making certain monthly payments to WFB on the terms and in the amounts set forth therein. (A true and correct copy of Schedule No. 4 is attached hereto as **Exhibit "5"** and the terms and conditions thereof are incorporated herein by reference.)

  16. In order to secure the obligations of ADC under the terms of the Financing Agreement and the Note, ADC granted to WFB a security interest in and to, *inter alia*, all of its right, title and interest in and to all of its (a) accounts, chattel paper, and other rights to payment, whether then owned or thereafter acquired; (b) inventory, whether then owned or thereafter acquired; (c) equipment, whether then owned or thereafter acquired; (d) general intangibles and contract rights, including without limitation all patient records and patient charts, whether then owned or thereafter acquired; and (e) substitutions and replacement for and products of any of the foregoing personal property, together with all accessions, attachments, parts and modifications, and repairs now or hereafter attached or affixed to or used in connection with any such personal property (collectively, the "Company Collateral").

  17. In order to secure the obligations of Knox under the terms of Guaranty No. 1, Knox granted to GBB (and its successors) a security interest in and to, *inter alia*, all of her (a) accounts, chattel paper, and other rights to payment, whether then owned or thereafter acquired; (b) inventory, whether then owned or thereafter acquired; (c) equipment, whether then owned or thereafter acquired; (d) general intangibles and contract rights, including without limitation all

patient records and patient charts, whether then owned or thereafter acquired; and (e) substitutions and replacement for and products of any of the foregoing personal property, together with all accessions, attachments, parts and modifications, and repairs now or hereafter attached or affixed to or used in connection with any such personal property (collectively, the "Knox Collateral" and together with the Company Collateral, collectively, the "Collateral").

18. The Collateral included the Practice's patient base, goodwill and other general intangibles.

19. Pursuant to the terms of the Financing Agreement and the Note, in the event that ADC fails to pay the amounts due thereunder when due, WFB may, *inter alia*, (a) declare all unpaid amounts due thereunder to be immediately due and payable and recover same and/or (b) take possession of the Collateral.

20. Upon information and belief, in or about 2009, without WFB's consent, ADC sold some or all of the Practice's equipment (which was part of the Collateral) for approximately $27,000.00 (the "Sale Proceeds").

21. Upon information and belief, in or about 2010, Knox moved the Practice from the Prior Office Location to the Current Office Location.

22. At the same time, Knox requested that WFB agree to release its security interest in and lien on the Collateral. WFB refused said request.

23. On or about June 1, 2011, ADC breached and defaulted under the terms of the Finance Agreement when it failed to make the monthly payment due under the terms of the Finance Agreement (the "Finance Agreement Default").

24. On or about June 1, 2011, ADC breached and defaulted under the terms of the Note when it failed to make the monthly payment due under the terms of the Note (the "Note Default" and together with the Finance Agreement Default, the "Default").

## COUNT I
### (Breach of Contract Against ADC)

25. WFB refers to and realleges each of its foregoing allegations set forth in its Complaint as though fully set forth herein.

26. By reason the foregoing, in accordance with the terms of the Finance Agreement, the entire balance of all unpaid monies due under the terms of the Finance Agreement became immediately due and payable (collectively, the "Finance Agreement Debt").

27. As of December 1, 2011, the total of the Finance Agreement Debt was in the amount of $162,535.14, plus interest, attorneys' fees, costs and any other amounts due under the Loan Documents.

28. WFB has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the terms of the Finance Agreement.

29. By reason of the foregoing, WFB is entitled to judgment as against ADC (a) in an amount not less than $162,535.14, plus interest, attorneys' fees, costs and any other amounts due under the Finance Agreement, all of which will continue to accrue.

## COUNT II
### (Breach of Contract Against ADC)

30. WFB refers to and realleges each of its foregoing allegations set forth in its Complaint as though fully set forth herein.

31. By reason the foregoing, in accordance with the terms of the Note, the entire balance of all unpaid monies due under the terms of the Note became immediately due and

payable (collectively, the "Note Debt" and together with the Finance Agreement Debt, collectively, the "Obligations").

32. As of December 1, 2011, the total of the Note Debt was in the amount of $38,198.61, plus interest, attorneys' fees, costs and any other amounts due under the Note.

33. WFB has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the terms of the Note.

34. By reason of the foregoing, WFB is entitled to judgment as against ADC (a) in an amount not less than $38,198.61, plus interest, attorneys' fees, costs and any other amounts due under the Note, all of which will continue to accrue.

## COUNT III
### (Conversion Against ADC)

35. WFB refers to and realleges each of the foregoing allegations of this Complaint as though fully set forth herein.

36. At all relevant times, WFB has had an immediate and superior right to possession of the tangible portion of the Collateral and the Sale Proceeds.

37. As a result of the foregoing, WFB has been damaged in an amount to be proven at the time of trial, but not less than an amount equal to the in-use and in-place value of the tangible portion of the Collateral and the Sale Proceeds.

38. By reason of the foregoing, WFB is entitled to a judgment against ADC in an amount to be determined at the time of trial, but not less than an amount equal to the in-use and in-place value of the tangible portion of the Collateral and the Sale Proceeds.

## COUNT IV
### (Unjust Enrichment Against Defendants)

39. WFB refers to and realleges each of the foregoing allegations of this Complaint as though fully set forth herein.

40. WFB has had a perfected security interest in and to the Collateral at all relevant times.

41. Upon information and belief, Defendants have obtained a financial benefit as a result of their wrongful use of the Collateral, as they have been able to use the Collateral without having to pay WFB.

42. As such, a benefit has been conferred upon Defendants.

43. Defendants have voluntarily accepted the conferred benefit and continue to accept and retain the benefit.

44. Given the foregoing, the circumstances are such that it would be inequitable for Defendants to retain any of the aforementioned benefits, including any income earned from their use and possession of the Collateral, without paying the value thereof to WFB.

45. As a result, Defendants have been unjustly enriched.

46. By reason of the foregoing, WFB is entitled to a judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, but not less than the rental value of the Collateral from and after the time of the Default, plus any income earned from its use and possession of the Collateral since the date of the Default, plus interest.

## COUNT V
### (Breach of Contract Against Knox)

47. WFB refers to and realleges each of the foregoing allegations of this Complaint as though fully set forth herein.

48. Pursuant to the terms of Guaranty No. 1, Knox is obligated to pay all of the Obligations to WFB.

49. Despite the foregoing and demand by WFB, Knox has failed to pay any of the Obligations to WFB.

50. By reason of his failure to pay the Obligations to WFB, Knox has breached the terms of Guaranty No. 1.

51. WFB has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the terms of Guaranty No. 1.

52. By the reason of the foregoing, WFB is entitled to judgment as against Knox in an amount not less than $200,733.75, plus interest, plus attorneys' fees, costs and any other amounts due under Guaranty No. 1, all of which will continue to accrue.

## COUNT VI
### (Breach of Contract Against Knox)

53. WFB refers to and realleges each of the foregoing allegations of this Complaint as though fully set forth herein.

54. Pursuant to the terms of Guaranty No. 2, Knox is obligated to pay all of the Obligations to WFB.

55. Despite the foregoing and demand by WFB, Knox has failed to pay any of the Obligations to WFB.

56. By reason of his failure to pay the Obligations to WFB, Knox has breached the terms of Guaranty No. 2.

57. WFB has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the terms of Guaranty No. 2.

58. By the reason of the foregoing, WFB is entitled to judgment as against Knox in an amount not less than $200,733.75, plus interest, plus attorneys' fees, costs and any other amounts due under Guaranty No. 1, all of which will continue to accrue.

**WHEREFORE,** WFB respectfully demands relief as follows:

(a) Judgment in favor of WFB and against ADC on Count I (Breach of Contract), in an amount not less than $162,535.14, plus interest, attorneys' fees, costs and any other amounts due under the Finance Agreement;

(b) Judgment in favor of WFB and against ADC on Count II (Breach of Contract), in an amount not less than $162,535.14, plus interest, attorneys' fees, costs and any other amounts due under the Note;

(c) Judgment in favor of WFB and against ACD on Count III (Conversion), in an amount to be determined at the time of trial, but not less than an amount equal to the in-use and in-place value of the tangible portion of the Collateral and the Sale Proceeds;

(d) Judgment in favor of WFB and against Defendants, jointly and severally, on Count IV (Unjust Enrichment), in an amount to be determined at the time of trial, but not less than the rental value of the Collateral from and after the time of the Default, plus any income earned from its use and possession of the Collateral since the date of the Default, plus interest;

(e) Judgment in favor of WFB and against Knox on Count V (Breach of Contract), in an amount not less than $200,733.75, plus interest, attorneys' fees, costs and any other amounts due under the Finance Agreement and the Note;

(f) Judgment in favor of WFB and against Knox on Count VI (Breach of Contract), in an amount not less than $200,733.75, plus interest, attorneys' fees, costs and any other amounts due under the Finance Agreement and the Note;

(g) Judgment awarding WFB its costs; and

(h) Any such further relief which, to this Court, seems just and proper.

Dated: December 28, 2011 /s/ Thomas F. DeVincke
Thomas F. DeVincke (#301759)
Bonner & Borhart, LLP
1950 U.S. Bank Plaza
220 South Sixth Street
Minneapolis, MN 55402
612.313.0711
612.455.2055 fax
tfd@bdbllp.com
Attorneys for Wells Fargo Bank, N.A.